# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILDRED PROPERO ZIALCITA,<br><br>       Plaintiff,<br><br>       v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>       Defendant. | Case No.  1:20-cv-00053-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 16, 17, 19) |

## I.

## INTRODUCTION

Mildred Propero Zialcita ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

/ / /

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and the matter has been assigned to the undersigned for all purposes.  (See ECF Nos. 6, 8, 21.)

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on April 27, 2016.  (AR 97, 98.)  Plaintiff's applications were initially denied on September 1, 2016, and denied upon reconsideration on January 3, 2017.  (AR 127-131, 138-142.)  Plaintiff requested and received a hearing before Administrative Law Judge Ruxana Meyer ("the ALJ").  Plaintiff appeared for a hearing on September 11, 2018.  (AR 29-70.)  On December 26, 2018, the ALJ found that Plaintiff was not disabled.  (AR 12-23.)  The Appeals Council denied Plaintiff's request for review on November 8, 2019.  (AR 6-8.)

### A.      Hearing Testimony

Plaintiff appeared with counsel and testified at a video hearing on September 11, 2018. (AR 34-56, 58-68.)  Plaintiff was born on June 18, 1967, and was fifty-one years old on the date of the hearing.  (AR 35.)  She attended high school and completed college.  (AR 34.)  Plaintiff received an associates degree in general education.  (AR 35.)

Plaintiff lives in a single story home.  (AR 35.)  She has a valid driver's license with no restrictions.  (AR 36.)  She drove herself to the hearing and sometimes drives to do errands like grocery shopping and to doctor's appointments.  (AR 36.)  On occasions, her son will drive her. (AR 36.)  Plaintiff has a son who was going to start working that month, and twenty-one year old twins, one that just graduated from college, and the other was in college and was going to join the Air Force.  (AR 36.)

Plaintiff is right handed and was wearing bilateral wrist braces at the hearing.  (AR 37.) She has been wearing the wrist braces since last year.  (AR 37.)  She wears the braces all day and then takes them off for an hour.  (AR 37.)  The braces were prescribed by her doctor because she has carpal tunnel.  (AR 37.)  Plaintiff has numbness, tingling, and muscle spasms in both of her hands.  (AR 38.)  The braces do not help her symptoms.  (AR 38.)

Plaintiff works as a perfume sampler for Macy's.  (AR 38.)  She works with fragrances during special events like Christmas and Mother's Day.  (AR 38.)  She holds the fragrances and

sprays them on people who are walking by and gives them a card with the fragrance on it.  (AR 38.)  Plaintiff worked as a counter manager for the fragrance department at Gottschalks until 2009 when the store went bankrupt.  (AR 38, 58.)  She was the cashier and in charge of stocking the supplies.  (AR 59.)  She would get a cart and bring maybe 30 fragrances in the cart to the display.  (AR 59.)  The boxes had 24 fragrances in them.  (AR 60.)  Plaintiff might lift twenty-five pounds.  (AR 61.)  She would stand at the counter, there were no stools to sit, so she would stand and walk all day.  (AR 61.)  Plaintiff did not order the supplies, they were automatically sent to them.  (AR 63.)  She would count the register at the end of the day if she was closing.  (AR 64.)  Plaintiff filed for unemployment and then went to work as a medical assistant from 2010 until 2015.  (AR 38-39.)  Plaintiff went back to school at San Joaquin Valley College in Hanford and received a certificate in medical assisting.  (AR 40.)  Plaintiff was fired from the medical assisting job.  (AR 40.)  Her manager was not happy with her and her relationship with the other doctor and other stuff.  (AR 41.)  Plaintiff went on unemployment after she was fired.  (AR 41.)  In 2016, she started working at Macy's.  (AR 41-42.)  She last worked on Mother's Day.  (AR 41.)  Her shift on Mother's Day was six hour, less a thirty minute lunch break.  (AR 42.)  She has to be careful with some of the fragrances because they will trigger her asthma.  (AR 42.)

Plaintiff is able to stand for an hour and after that she will have to lean on the counter.  (AR 43.)  She can walk for thirty minutes and then her feet will get kind of sore and her lower back will hurt.  (AR 43.)  Plaintiff uses Salonpas on her lower back at night.  (AR 43.)  She also has a TENS unit and takes tramadol for pain.  (AR 43.)  Plaintiff had an injection at the base of her skull in October for pain, but it did not help, causing her to have other headaches.  (AR 43.)  Since the injection, when she has a headache it pulsates from where the injection was and has added to her pain.  (AR 43-44.)

Plaintiff does not usually go grocery shopping by herself.  (AR 44.)  Her sons will help her with the groceries.  (AR 44.)  Plaintiff is able to lift a gallon of milk.  (AR 44.)  If she lifts more than that her hand will hurt and it takes her two hands to pour the milk.  (AR 44-45.)

Plaintiff gets up in the morning and her legs tingle.  (AR 45.)  She will massage her legs

1    or have her youngest son "karate" it to wake up her legs.  (AR 45.)  She takes her thyroid

2    medication and has to wait thirty minutes before she eats.  (AR 45.)  Plaintiff makes herself tea

3    and toast for breakfast.  (AR 45.)  Plaintiff goes out into the backyard for thirty minutes to an

4    hour.  (AR 45.)  She waters her plants, and sits and listens to the birds sing.  (AR 45.)  Plaintiff

5    does not do any of the cooking.  (AR 46.)  She just directs her sons how to cut up the vegetables.

6    (AR 46.)  She does not really clean the house, just wipes off the countertop.  (AR 47.)  She tells

7    her sons what to do.  (AR 47.)  Her son's clean the house and do the yardwork.  (AR 47.)  She

8    also has a gardener.  (AR 47.)

9          In 2018, Plaintiff went to the Philippines for four days, and then to Japan for six days.

10   (AR 47-48.)  It was a family trip to see where her mother grew up.  (AR 48.)  It was difficult for

11   Plaintiff to sit on the plane so she would walk in the plane.  (AR 48.)  Plaintiff does not use an

12   assistive device, but she did have a wheelchair to get from gate to gate because it was far

13   between the gates.  (AR 48-49.)

14         Plaintiff has a cellphone and uses Facebook, Instagram, and email.  (AR 49.)  She does

15   not have any problems with her fingers using the phone to text or type.  (AR 49.)

16         Plaintiff has tramadol and gabapentin, plus other medication that she cannot pronounce.

17   (AR 49.)  Plaintiff's medications make her tired.  (AR 45.)  She does not nap during the day.

18   (AR 45.)  Plaintiff went to physical therapy recently and does her exercises at home for about an

19   hour.  (AR 50.)

20         Plaintiff had a fusion and laminectomy in 2016 and has been worse since.  (AR 50-51.)

21   She is not able to drive long distances, like to go to San Francisco, Los Angeles, or San Diego.

22   (AR 51.)  She cannot play badminton or tennis.  (AR 51.)  Her symptoms were tolerable before

23   the surgery, but are now intolerable.  (AR 51.)  Her lower back and neck pain have increased.

24   (AR 52.)  The numbness in her arms has gotten worse.  (AR 52.)  She drops plates or her phone

25   and cannot pick up her pots and pans because they are heavy.  (AR 52.)  She cannot type like she

26   used to.  (AR 52.)  She uses her index finger to type for about five minutes.  (AR 53.)  Reaching

27   above her head bothers her neck.  (AR 53.)  Reaching in front of her bothers her shoulders.  (AR

28   53.)

Plaintiff has been going to physical therapy twice a week for the past two years with a break due to insurance coverage.  (AR 55.)  She just started back the prior week for physical therapy on her left hand.  (AR 55.)

Plaintiff had a carpal tunnel release on her left hand in June 2018.  (AR 54, 55.)  It did not help her numbness or strength.  (AR 54-55.)

Erin Welsh, a vocational expert ("VE"), also testified at the hearing.  (AR 56-67.)

The ALJ left the hearing open for Plaintiff to submit medical evidence of MRIs that were to be performed after the hearing.  (AR 33.)

**B.     ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2020.

- Plaintiff has not engaged in substantial gainful activity since the alleged onset date of April 1, 2015.

- Plaintiff has the following severe impairments: degenerative disc disease of the cervical spine, status-post cervical laminectomy and decompression May 2016; bilateral carpal tunnel syndrome, status-post release of the left hand June 2018; long-term opiate analgesic use; obesity; and asthma.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

- Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except not more than frequent climbing of stairs or ramps, or balancing, stooping, kneeling, or crouching, and not more than occasional climbing of ladders, ropes, and scaffolding, or bilateral overhead reaching tasks.  In addition, Plaintiff should work with not more than occasional exposure to concentrated levels of pulmonary irritants such as fumes and dust, and not more often than frequently perform ordinary gross handling or fine-fingering tasks, bilaterally.

- Plaintiff is capable of performing past relevant work as a medical assistant as actually and generally performed.  This work does not require the performance of work-related activities precluded by her residual functional capacity.

- Plaintiff has not been under a disability, as defined in the Social Security Act, from April 1, 2015, through the date of this decision.

(AR 17-23.)

### III.

### LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[2] Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age,

---

[2] The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R. §404.1501 et seq., however Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq.  The regulations are generally the same for both types of benefits.  Therefore, further references are to the disability insurance benefits regulations, 20 C.F.R. §404.1501 et seq.

education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).   "Substantial evidence" means more than a scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff contends that the ALJ erred by rejecting the residual functional capacity assessment completed by her physical therapist and failing to provide clear and convincing reasons to reject her symptom testimony and that the residual functional capacity is not supported by substantial evidence in the record.

/ / /

A.      Physical Therapist Opinion

Plaintiff contends that the ALJ erred by rejecting the opinion of her physical therapist which is the only treating provider opinion in the record.  Plaintiff argues that the ALJ did not consider the relevant factors in rejecting Dr. Rieckenberg's opinion and the objective evidence in the record supports the opinion of Dr. Rieckenberg that Plaintiff is limited to less than sedentary work.

Defendant counters Dr. Rieckenberg, as a physical therapist, is not an acceptable medical source nor is he a treating source under the regulations.  Accordingly, the ALJ may reject his opinion by providing germane reasons to do so.  Defendant argues that the ALJ rejected Dr. Rieckenberg's opinion because it was inconsistent with the evidence in the record, he provided little support for the opinion and it was conclusory, and that his opinion did not meet the durational requirement which are all germane reasons.

Plaintiff replies that the ALJ did not consider the objective evidence in the record that supports the opinion of Dr. Rieckenberg.

Medical sources are divided into two categories: acceptable medical sources and other medical sources.  20 C.F.R. § 416.902.  Under the regulations, a medical opinion is a statement from an acceptable medical source that reflects judgment about the nature and severity of the claimant's impairments.  20 C.F.R. § 416.927(a)(1).  For claims filed before March 27, 2017, only licensed physicians and other qualified specialists were "acceptable medical sources" under 20 C.F.R. § 416.927(a).  See SSR 06-3p: Sources of Evidence; Disability Determinations by Other Agencies.  Physical therapists are not "acceptable medical sources."  Wennet v. Saul, 777 F.App'x 875, 878 (9th Cir. 2019); Roberts v. Berryhill, 734 F.App'x 489, 490 (9th Cir. 2018).[3]

The ALJ must consider the opinions of medical providers who are not within the definition of an acceptable medical source.  20 C.F.R. § 404.1527(f).  Opinions of these sources are not entitled to the same deference as an acceptable medical source, and an ALJ may only disregard other medical source testimony by providing "reasons germane to each witness for

---

[3] Citation to unpublished Ninth Circuit opinions is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1  doing so." Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010); Revels v.

2  Berryhill, 874 F.3d 648, 655 (9th Cir. 2017); Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir.

3  2012).   The factors to be considered in evaluating the opinion are the same factors used to

4  evaluate acceptable medical sources.  20 C.F.R. § 404.1527(f).  These factors are the nature and

5  extent of the treatment relationship, length and frequency of treatment, the supportability of the

6  opinion, consistency with the medical record, specialization of the source, and other factors that

7  either support or contradict the medical opinion.  20 C.F.R. § 404.1527(c)(2)-(6).

8      The ALJ found that no significant reliance should be accorded to the largely unexplained

9  opinion of Plaintiff's physical therapist, Chad Rieckenberg.  (AR 21.)  On August 31, 2018, Dr.

10  Rieckenberg  completed  a  residual  functional  capacity  assessment.    (AR 978-981.)    Dr.

11  Rieckenberg stated he had been seeing Plaintiff two times a month for six months and based the

12  assessment on the diagnoses of neck pain, cervical fusion, and lower back pain.  (AR 978.)  He

13  did not include a prognosis.  (AR 978.)  He noted that Plaintiff's symptoms were neck pain,

14  headache, spine stiffness, bilateral hand numbness and shooting pain.  (AR 978.)  He stated that

15  Plaintiff had significantly limited cervical active range of motion.  (AR 978.)  He opined that

16  Plaintiff could frequently lift 15 pounds and rarely lift more than 20 pounds; could walk more

17  than one city block; could climb steps, but had problems with balance for long periods of time.

18  (AR 979.)  She had problems stooping, crouching, and bending.  (AR 979.)  Plaintiff was

19  required to lie down or recline for thirty minutes due to pain for less than one hour per day.  (AR

20  979.)  She could sit for about 3 hours in an 8 hour workday; and could stand and walk for about 6

21  hours in an 8 hour workday; and would need unscheduled breaks a couple times a day for 15 to

22  30 minutes.  (AR 979-980.)  Plaintiff does not need an assistive device to ambulate.  (AR 980.)

23  She is limited in grasping, turning, twisting and fine manipulations bilaterally fifty percent of the

24  time; and is limited in reaching, including overhead seventy five percent of the time.  (AR 980.)

25  Plaintiff cannot climb ropes or scaffolds, but can climb stairs, ladders, and ramps.  (AR 980.)

26  Plaintiff  occasionally  experiences  stress  severe  enough  to  interfere  with  attention  and

27  concentration necessary to perform simple work tasks.  (AR 980.)  Plaintiff would be off task

28  twenty percent of a workday due to her limitations; and would be unable to complete an 8 hour

1    workday five or more days per month.  (AR 981.)  Plaintiff can efficiently perform work on a

2    sustained basis seventy-five percent of a five day eight hour per day workweek.  (AR 981.)

3    Plaintiff is able to sustain work in a competitive work environment for eight hours a day five

4    days a week for a six month period.  (AR 981.)

5         The ALJ gave no significant reliance on the opinion because the limitations as indicated,

6    such as only sitting for 3 hours in an 8-hour workday, the need for extra breaks, and missed

7    scheduled workdays, were not correlated in any way with objective medical signs or durational

8    laboratory findings.  (AR 21.)  The ALJ noted that Dr. Rieckenberg did not respond to the

9    question about the onset date of the limitations opined and therefore no continuous twelve month

10   period could be inferred from the form.  (AR 21, 978.)  The ALJ found that in total, there is not

11   enough supportability or consistency with durational clinical findings in the record to accord any

12   significant reliance to this medically unexplained less than sedentary opinion by Dr.

13   Rieckenberg.  (AR 21.)

14        Plaintiff argues that the objective findings in the treatment notes support Dr.

15   Rieckenberg's opinion.  On June 25, 2018, Dr. Rieckenberg notes some limitation in range of

16   motion following the cervical laminectomy and cervical fusion.  (AR 806).  While Plaintiff

17   consistently complained of pain ranging from 5 to 6/10, the treatment records indicate that she

18   was able to complete her physical therapy without any increase in her symptoms and generally

19   with decreased pain.  (AR 789, 791, 793, 795, 797, 799, 801, 803, 807.)

20        Further, On January 9, 2018, Plaintiff was discharged from physical therapy with

21   improved cervical range of motion, shoulder flexion of 4/5 bilaterally; grip strength of 4/5

22   bilaterally; elbow extension and flexion of 4/5 bilaterally; wrist flexion and extension of 3+/5

23   bilaterally; and normal reflexes.  (AR 752.)  It was noted that Plaintiff had a 37 percent

24   improvement over 12 sessions.  (AR 752.)

25        On January 30, 2018, Nurse Practitioner Yap found that Plaintiff was able to walk on her

26   heels and toes, with normal cervical and lumbar range of motion and no pain on testing and all

27   provocative testing was negative bilaterally.  (AR 766.)

28        On March 2, 2018, Dr. Royter noted that Plaintiff had partial improvement after physical

1   therapy and her pain was well controlled.  (AR 689.)  On musculoskeletal examination, he found

2   that Plaintiff had normal range of motion and normal strength.  (AR 691.)  As discussed below,

3   substantial evidence in the record supports the ALJ's finding that on physical examination

4   Plaintiff was found to have normal motor strength, equal reflexes, and normal.

5       The failure to indicate the durational period of the limitations opined is a germane reason

6   to reject Dr. Rieckenberg's August 31, 2018 opinion.  Allen v. Comm'r of Soc. Sec., No. CV-17-

7   02543-PHX-BSB, 2018 WL 6660009, at *12 (D. Ariz. Dec. 19, 2018) (the twelve-month time

8   period is germane and, therefore, the ALJ did not err in giving other medical source opinion little

9   weight based on the equivocal response about the duration of the claimant's limitations).

10      **B.      Plaintiff's Credibility**

11      Plaintiff contends that the ALJ erred by failing to provide clear and convincing reasons to

12  reject her symptom complaints.  Plaintiff argues that since she met the first part of the test, the

13  ALJ could not reject her symptom testimony by finding that the objective findings in the record

14  do not support her symptom testimony.  Plaintiff asserts that the ALJ mischaracterizes the

15  evidence in the record by pointing to appointments for no pain related complaints and reports

16  that she was generally happy with her surgical outcome and reported some improvement with

17  physical therapy.

18      Defendant contends that substantial evidence supports the ALJ's finding that her

19  statements were inconsistent with the medical record, there was evidence of effective treatment,

20  and the record contains evidence of activities that are inconsistent with her symptom testimony.

21      Plaintiff replies that the Commissioner misstates the demanding standard that is required

22  to reject her symptom testimony.  Plaintiff again asserts that since she met the first part of the

23  test, her symptom testimony was improperly rejected.

24      "An ALJ is not required to believe every allegation of disabling pain or other non-

25  exertional impairment."  Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation

26  and citations omitted).  Determining whether a claimant's testimony regarding subjective pain or

27  symptoms is credible, requires the ALJ to engage in a two-step analysis.  Molina, 674 F.3d at

28  1112.  The ALJ must first determine if "the claimant has presented objective medical evidence of

1   an underlying impairment which could reasonably be expected to produce the pain or other

2   symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal

3   punctuation and citations omitted).   This does not require the claimant to show that her

4   impairment could be expected to cause the severity of the symptoms that are alleged, but only

5   that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

6        Then "the ALJ may reject the claimant's testimony about the severity of those symptoms

7   only by providing specific, clear, and convincing reasons for doing so." Brown-Hunter v.

8   Colvin, 806 F.3d 487, 488–89 (9th Cir. 2015).  "The ALJ must specifically make findings that

9   support this conclusion and the findings must be sufficiently specific to allow a reviewing court

10  to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not

11  arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir.

12  2004) (internal punctuation and citations omitted).  Factors that may be considered in assessing a

13  claimant's subjective pain and symptom testimony include the claimant's daily activities; the

14  location, duration, intensity and frequency of the pain or symptoms; factors that cause or

15  aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other

16  measures or treatment used for relief; functional restrictions; and other relevant factors.

17  Lingenfelter, 504 F.3d at 1040; Thomas, 278 F.3d at 958.  In assessing the claimant's credibility,

18  the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the

19  claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other

20  testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately

21  explained failure to seek treatment or to follow a prescribed course of treatment. . .."

22  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284).

23  The district court is constrained to review those reasons that the ALJ provided in finding the

24  claimant's testimony not credible. Brown-Hunter, 806 F.3d at 492.

25       The ALJ found that Plaintiff's medically determinable impairments could reasonably be

26  expected to cause the alleged symptoms, however the statements regarding the intensity,

27  persistence and limiting effects of the symptoms was not entirely consistent with the medical

28  evidence and other evidence in the record for the reasons explained in the decision.  (AR 22.)

1    The ALJ considered that Plaintiff testified that she lived with her three sons and reported
2    that she had driven to the hearing herself, as she maintained a valid driver's license.  (AR 22,
3    36.)  Plaintiff wore wrist braces to the hearing, and asserted that she needed to wear them, all
4    day, every day, "since last year."  (AR 22, 37.)  She further alleged that she had received no
5    improvement from her left carpal tunnel release on July 27, 2018, so she did not want surgery on
6    her right, or dominant, hand.  (AR 22, 37.)  But, the ALJ found no evidence that in the record
7    that any neurosurgeon had advised a carpal tunnel release of her right hand.  (AR 22.)

8    The ALJ noted that Plaintiff had acknowledged that she was able to lift a gallon of milk
9    and to drive a motor vehicle, by using both hands together and that she also regularly uses a
10   cellphone, posts pictures on Instagram, and emails and texts from her phone.  (AR 22, 44-45,
11   49.)

12   During the hearing, Plaintiff stated that she could only walk for 30 minutes at one time,
13   and stand for 1 hour.  (AR 22, 43.)  The claimant alleged that both of her legs tingled, so she
14   needed to have her son massage them.  (AR 22, 45.)  However, the ALJ noted that the record
15   consistently documented normal motor strength, equal reflexes, and normal tone on physical
16   examination and Plaintiff usually denied having any difficulty with ambulation.

17   The ALJ also considered that Plaintiff stated that she felt tired as a result of taking
18   medication.  (AR 22, 45.)  She described her major daily activity to be going outside to her
19   backyard to water and listen to the birds.  (AR 22, 45.)  However, the ALJ did not find any
20   persuasive evidence in the record that Plaintiff was as limited as she stated given that she has
21   sustained a light part-time job over the past several years, or that she would be too fatigued if
22   offered, to perform the same job on a more full-time work schedule.  (AR 22.)

23       1.   Inconsistent Testimony

24   Here, the ALJ considered that Plaintiff stated that her major daily activity was going into
25   the backyard to water her plants and sit listening to the birds for forty-five minutes to an hour
26   (AR 45), but she had also testified that she was working a part-time job which required her to
27   stand and demonstrate fragrances for six hours with a half hour break (AR 41.)  The ALJ could
28   reasonably find that Plaintiff's testified ability to work as a perfume demonstrator in a major

13

1   department store was inconsistent which her allegations of the limited daily activities that she

2   was able to perform.  See Robbins, 466 F.3d at 884 (conflicting or inconsistent statements can

3   contribute to an adverse credibility finding); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th

4   Cir. 1997), as amended on reh'g (Sept. 17, 1997) (credibility determination can be based on

5   conflicts between the claimant's testimony and his own conduct, or on internal contradictions in

6   that testimony).

7         2.      Objective Medical Evidence

8         The ALJ also found that Plaintiff's allegation were not supported by the objective

9   medical evidence in the record.  The ALJ considered that Plaintiff testified that both of her legs

10  tingled and she needed her son to massage them, and she was only able to walk for thirty minutes

11  at one time and stand for one hour.  (AR 22, 43, 45.)  However, the medical record consistently

12  documented normal motor strength, equal reflexes, and normal tone and Plaintiff generally

13  denied any difficulty in ambulating.  (AR 22.)

14        The determination that a claimant's complaints are inconsistent with clinical evaluations

15  can satisfy the requirement of stating a clear and convincing reason for discrediting the

16  claimant's testimony.  Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297

17  9th Cir. 1999).  The ALJ properly considered this evidence in weighing Plaintiff's credibility.

18  "While subjective pain testimony cannot be rejected on the sole ground that it is not fully

19  corroborated by objective medical evidence, the medical evidence is still a relevant factor in

20  determining the severity of the claimant's pain and its disabling effects."  Rollins v. Massanari,

21  261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

22        Plaintiff argues that the appointments which the ALJ relied on was for a follow-up of a

23  throat problem and were not for her back pain.  Plaintiff was seen by Nurse Practitioner Cuellar

24  on December 12, 2016 for a follow up of a throat problem.  (AR 577.)  Plaintiff denied having

25  any weakness or joint pain but admitted to having fatigue due to many activities, such as college

26  and family.  (AR 577.)  It is noted that although the record states it is a follow-up for a throat

27  problem, a complete physical examination was performed beyond a mere check-up.  (AR 578-

28  579.)  On musculoskeletal examination, Plaintiff had full range of motion in her back, with no

1  costovertebral angle tenderness, and spinal processes and paraspinal muscles were nontender to

2  palpation.  (AR 579.)  Plaintiff had no swelling or deformities and no pain with active range of

3  motion.  (AR 579.)  Sensory examination was intact, and Plaintiff had normal strength, tone, and

4  reflexes, and a normal gait.  (AR 579.)

5       The ALJ also considered that Plaintiff was seen by Dr. Royter for her degenerative spine

6  disease on February 28, 2017.  (AR 717.)  She reported partial pain control with gabapentin and

7  was taking painkillers when necessary.  (AR 717.)  No musculoskeletal examination is recorded.

8  On neurologic examination, Plaintiff was noted to have normal motor function and normal deep

9  tendon reflexes.  (AR 718.)

10      Plaintiff returned to see Dr. Royter on March 2, 2018.  (AR 689.)  Plaintiff reported

11  partial improvement after physical therapy and that her pain was well controlled.  (AR 689.)  She

12  was taking painkillers when necessary.  (AR 689.)  On musculoskeletal examination, Plaintiff

13  was found to have normal range of motion and strength.  (AR 691.)

14      Plaintiff argues that physical therapy examinations from January 31, 2018 through

15  August 15, 2018 document abnormal range of motion of the lumbar spine.  Review of the

16  records around this time period show the following.

17      On January 9, 2018, Plaintiff was discharged from physical therapy with improved

18  cervical range of motion, shoulder flexion of 4/5 bilaterally; grip strength of 4/5 bilaterally;

19  elbow extension and flexion of 4/5 bilaterally; wrist flexion and extension of 3+/5 bilaterally;

20  and normal reflexes.  (AR 752.)  It was noted that Plaintiff had a 37 percent improvement over

21  12 sessions.  (AR 752.)

22      On January 11, 2018, Plaintiff was seen by Nurse Practitioner Atme and complained of a

23  cough and continued numbness down her left leg.  (AR 615.)  Physical examination was

24  unremarkable.  (AR 618.)  Plaintiff had a chest x-ray that found "1. No evidence of consolidating

25  pneumonia or effusion; 2. The heart size and pulmonary vasculature are unremarkable.  3. There

26  is bronchiolar cuffing and coarsening of the bronchial markings which may reflect bronchitis.  4.

27  Diffuse disc space narrowing and degenerative spurring of the thoracic spine is seen."  (AR 622.)

28      Plaintiff returned on January 22, 2018, to receive x-ray results.  (AR 611.)  Physical

1  examination notes normal strength, tone, and reflexes, intact sensory examination, and a normal

2  gait.  (AR 613.)  On January 24, 2018, Plaintiff had a CT scan of the chest the found "1. Hepatic

3  steatosis.  No other abnormalities appreciated on CT examination of the abdomen and pelvis.

4  Specifically no right hilar abnormalities identified."  (AR 609.)

5      On January 30, 2018, Plaintiff was seen by Nurse Practitioner Yap complaining of back

6  and neck pain.  (AR 761.)  Musculoskeletal examination notes normal gait and Plaintiff was able

7  to walk on her heels and toes.  (AR 765.)  She had no pain with cervical range of motion testing.

8  (AR 765.)  Spurling test, Adson test, median stretch test, and ulnar stretch test were all negative.

9  (AR 765.)  Plaintiff had no pain in her upper extremities with range of motion testing.  (AR 765.)

10  Subluxation, supraspinatus test, adduction, apprehension, relocation, and impingement test were

11  negative bilaterally.  (AR 765.)  There was no tenderness to palpation over the biceps tendon,

12  supraspinous tendon, AC joint, or trapezius.  (AR 765.)  No trigger points were found.  (AR

13  765.)  Hip examination revealed no pain with range of motion testing and there was no

14  tenderness at the trochanteric bursa.  (AR 765.)  There was no tenderness to palpation at the

15  lateral or medical joint lines on the bilateral knees.  (AR 765.)  Compression of the patella on the

16  left knee did not reproduce Plaintiff's symptoms.  (AR 765.)  Lachman and drawer signs and

17  McMurray signs were negative bilaterally.  (AR 765.)

18      Range of motion of the lumbar spine was normal.  (AR 765.)  Straight leg raising in the

19  supine and sitting positions were negative bilaterally.  (AR 765.)  Slump test, Patrick test, and

20  reverse Thomas test and negative bilaterally.  (AR 765.)  Reflexes of the knees and ankles were

21  2+ bilaterally.  (AR 766.)  Babinski signs were negative bilaterally and there was no clonus.  (AR

22  766.)  Sensation was normal in all dermatomes.  (AR 766.)  Plaintiff's strength was 5/5

23  bilaterally in the lower extremities.  (AR 766.)

24      Plaintiff was seen for physical therapy on January 31, 2018, and reported low back pain.

25  (AR 839.)  Upon evaluation she had normal sensation, symmetrical 2+ reflexes, single leg raise

26  test was negative, SI joint tests were positive, mid/lower lumbar vertebral segment, thoracic

27  vertebral segment, and hip capsule restrictions were found.  (AR 841.)  Plaintiff had physical

28  therapy on February 13 and 21, 2018, reporting lower back pain of 3 or 4/10.  (AR 835, 837.)

She had physical therapy on February 22, 2018, reporting lower back and posterior hip pain of 5/10.  (AR 833.)

Plaintiff had a follow-up with Dr. Royter on March 2, 2018, and reported partial improvement with physical therapy.  (AR 689.)  She also reported that her pain was well controlled and she was using painkillers as necessary.  (AR 689.)  She had normal range of motion and muscle strength on musculoskeletal examination.  (AR 691.)

On March 5, 2018, Plaintiff reported for physical therapy complaining of lower back and posterior hip pain of 5/10.  (AR 831.)

Plaintiff saw Nurse Practitioner Atme on March 7, 2018, to receive her CT results.  (AR 605.)  She reported that she was continuing to have numbness down her left leg.  (AR 605.)  Physical examination notes normal strength, tone, and reflexes, and sensory exam was intact.  (AR 606.)  Plaintiff had a normal gait.  (AR 607.)  Plaintiff had physical therapy from March 8 through the 29, 2018, reporting pain ranging from 5-6/10.  (AR 821, 823, 825, 827, 829.)

On April 2, 2018, Plaintiff reported for physical therapy reporting pain of 5/10 in her total spine due to weekend activities that had caused her to be on her feet all day.  (AR 819.)  On April 4, 2018, Plaintiff reported lower back and neck pain of 5/10.  (AR 811.)  She returned on April 9, 2018, reporting lower back pain.  (AR 811.)  On examination, she demonstrated increased lumbar active range of motion and increased lower extremity strength.  (AR 813.)

On April 24, 2018, Plaintiff was seen by Nurse Practitioner Atme and complained that she was continuing to have numbness down her left leg.  (AR 599.)  Examination was unremarkable.  (AR 601.)

Plaintiff was seen by Dr. Mal for an evaluation of her left hand numbness and weakness.  (AR 688.)  On examination she was noted to have weakness in the hand and a positive Tinel and Durkins compression test.  (AR 688.)  She had full range of motion and no signs of infection.  (AR 688.)

On May 12, 2018, Plaintiff saw Nurse Practitioner Atme and complained of continued pain down her left leg.  (AR 596.)  Physical examination was unremarkable and she was referred to a neurosurgeon for a second opinion.  (AR 598.)

Dr. Mal saw Plaintiff on June 21, 2018 due to her upcoming surgery. (AR 687.) Physical examination notes hand weakness, positive Tinel and Durkins compression test, and full range of motion. (AR 687.)

Plaintiff presented for physical therapy on June 25, 2018, complaining of lower cervical and thoracic pain and numbness and tingling and shooting pain, and headaches. (AR 805.) The assessment was that Plaintiff should do well with physical therapy focused on improving her cervical active range of motion symmetry and improving upright posture through strengthening and resolving her radicular symptoms. (AR 809.)

On June 26, 2018, Plaintiff saw Nurse Practitioner Atme complaining of a cough and numbness down her left leg. (AR 593.) She reported she was seeking disability and needed a functional capacity done. (AR 593.) Examination was unremarkable. (AR 594.)

On June 27, 2018, Dr. Mal saw Plaintiff preop and musculoskeletal examination notes normal range of motion and strength. (AR 969.) Plaintiff had carpal tunnel release surgery. (AR 964.)

Plaintiff had physical therapy on July 9, 2018, and reported pain of 6/10 to her posterior cervical spine and mid thoracic spine. (AR 803.)

Plaintiff saw Dr. Mal for a two week postop appointment on July 11, 2018, reporting that her pain was well controlled. (AR 682.) Examination notes that the incision was healing well and neurovascular was intact. (AR 682.)

Plaintiff had physical therapy from July 16 to August 15, 2018, reporting pain of 5 to 6/10. (AR 789, 791, 793, 795, 797, 799, 801.)

Substantial evidence supports the ALJ's findings that Plaintiff on physical examination Plaintiff was found to have normal motor strength, equal reflexes, and normal tone and the record does not contain evidence that she had any difficulty in ambulating.

The ALJ provided clear and convincing reasons to reject Plaintiff's symptom testimony that are supported by substantial evidence in the record. Having found that the ALJ provided clear and convincing reasons to reject Plaintiff's symptom testimony, the other issues raised by Plaintiff would be harmless even the ALJ erred. ALJ's decision will not be reversed for errors

1   that are harmless.  Burch, 400 F.3d at 679.

2       **C.**     **Residual Functional Capacity**

3       Plaintiff contends that the residual functional capacity is not supported by substantial

4   evidence in the record because it was not based on any updated treating or examining physicians

5   limitations.  Essentially, Plaintiff is arguing that the ALJ could not issue an opinion without a

6   physician reviewing the updated medical record.

7       Defendant counters that because the opinions of the state medical consultants were

8   consistent with the treatment record, substantial evidence supports the ALJ's assessment of the

9   opinion evidence.  Further, Defendant argues that the Ninth Circuit has repeated held that an ALJ

10   may continue to rely on the expert opinions of the state agency consultants despite the fact that

11   time has elapsed and subsequent evidence has been entered into the record.

12       Plaintiff replies that the ALJ did not consider all the evidence in the medical record and

13   rejected the only opinion of a provider that treated Plaintiff in favor of the options of the non-

14   examining state medical consultants.

15       A claimant's RFC is "the most [the claimant] can still do despite [his] limitations."  20

16   C.F.R. § 416.945(a)(1).  The RFC is "based on all the relevant evidence in [the] case record."  20

17   C.F.R. § 416.945(a)(1).  "The ALJ must consider a claimant's physical and mental abilities, §

18   416.920(b) and (c), as well as the total limiting effects caused by medically determinable

19   impairments and the claimant's subjective experiences of pain, § 416.920(e)."  Garrison v.

20   Colvin, 759 F.3d 995, 1011 (9th Cir. 2014).  At step four the RFC is used to determine if a

21   claimant can do past relevant work and at step five to determine if a claimant can adjust to other

22   work.  Garrison, 759 F.3d at 1011.  "In order for the testimony of a VE to be considered reliable,

23   the hypothetical posed must include 'all of the claimant's functional limitations, both physical

24   and mental' supported by the record."  Thomas, 278 F.3d at 956.

25       1.     Medical Evidence

26       The ALJ considered that the record documents a medical history for Plaintiff that is most

27   significant for complaints of chronic neck pain following a motor vehicle, for which she was

28   referred circa April 2015, for 10 visits of physical therapy over a 10 week time-period, and with

an assessed "good" rehabilitation potential.  (AR 18, 427.)  She had an MRI which showed degenerative disc disease in the cervical spine with moderate thecal sac narrowing at C3-C6 and mild impingement of the cord at C4-C5.  (AR 18, 407.)

By September 11, 2015, Plaintiff had completed her scheduled 10 sessions of physical therapy and reported significant pain reduction to a level "3" on a "1-10" pain scale, which was reduced down from 6-9 when she started although she continued to endorse symptoms of numbness and tingling.  (AR 19, 413.)  Plaintiff was noted to have increased cervical range of motion and upper extremity strength.  (AR 413.)

The ALJ considered that Plaintiff was able to return to at least part-time work in 2016, including work at SGA levels in February 2016.  (AR 19, 220.)  However, following diagnosis of cervical stenosis with myelopathy, Plaintiff eventually underwent a laminectomy and cervical decompression on May 18, 2016.  (AR 19, 466-483.)

On July 14, 2016, about two months after her surgery, Plaintiff reported that other than having some intermittent left arm pain which had begun three weeks prior, she was "otherwise happy with her surgical outcome."  (AR 19, 527.)  Post-operative x-rays showed good position of the hardware, without evidence of failure.  (AR 19, 527.)  Examination on this date revealed that Plaintiff had equal reflexes throughout.  (AR 19, 526.)  Plaintiff's motor was noted to be 5/5 on the right and 4 or 5/5 on the left.  (AR 526.)  Sensation was patchy throughout.  (AR 527.)  Hoffman's was negative bilaterally and ankle clonus was negative bilaterally.  (AR 527.)  Plaintiff ambulated in a normal fashion and was able to heel and toe walk without difficulty, but was unable to tandem walk without difficulty.  (AR 527.)

On September 30, 2016, Plaintiff was seen by Nurse Practitioner Atme and reported that she was still taking prescribed narcotic/opiate medication with "mild" relief of pain symptoms.  (AR 19, 562.)  On examination, Plaintiff was unable to rotate her neck or flex her back, with tenderness to palpation of the paraspinal muscles with spasms bilaterally.  (AR 564.)

Plaintiff was seen by nurse practitioner Cuellar on December 12, 2016 and was found to have normal active musculoskeletal range of motion, and intact neurological signs, including normal motor strength, tone, and reflexes.  (AR 19, 579.)

On January 5, 2017, Plaintiff had an abnormal bilateral nerve conduction study and normal bilateral needle EMG exam finding evidence of bilateral median neuropathy localized at the wrist consistent with carpal tunnel syndrome and no evidence of bilateral cervical radiculopathy or other entrapment neuropathies.  (AR 19, 783.)

Plaintiff had an MRI on February 22, 2017, which showed grossly mild degenerative changes in the cervical spine, still partial effacement of the thecal sac, but now with less neural-foraminal narrowing than before surgery, and no findings of stenosis or myelopathy.  (AR 19, 722-723.)

Although Plaintiff complained of knee pain, x-rays on March 31, 2017, found an unremarkable study of the knee.  (AR 19, 664.)

By August 2017, the claimant had been referred to a hand specialist to consider treatment for carpal tunnel.  (AR 19, 642.)  Plaintiff was also referred back to physical therapy, and on November 1, 2017, she estimated the current level of her neck pain at 4/10 and acknowledged that stretching exercises had helped turn her head better.  (AR 19, 862.)  On March 2, 2018, Plaintiff reported partial improvement with physical therapy and that she was taking painkillers only when necessary, as systems review otherwise was within normal limits.  (AR 19, 689.)  On musculoskeletal examination, Dr. Royter found normal range of motion and strength.  (AR 691.)

Plaintiff had an initial examination with Dr. Mal on April 27, 2018, and he found a positive Tinel's sign for the left hand.  (AR 19, 688.)  Plaintiff underwent a left carpal tunnel release on June 27, 2018.  (AR 19, 955-964.)

On July 11, 2018, Plaintiff had a post op appointment and her sutures were removed.  (AR 19, 682.)  On examination she was found to be neurovascularly intact, and was advised to avoid heavy lifting for the next two weeks.  (AR 19, 682.)

Plaintiff had MRIs of the thoracic and cervical spine on September 8, 2018.  (AR 19.)  The MRI of the thoracic spine showed "mild" scoliosis, and the MRI of the cervical spine showed degenerative disc disease of the cervical spine, including some narrowing of the thecal sac but no related compression of the spinal cord.  (AR 19, 982, 984.)

The ALJ found that it was reasonable that for short periods of time, such as just prior to

and just after her cervical spine surgery and her left hand surgery in June 2018, that Plaintiff would have been further limited.  (AR 21-22.)  But the ALJ found that a greater or more restrictive residual functional capacity was not objectively supported by the medical signs and laboratory findings for any continuous twelve month period in the record as a whole.  (AR 22.)

The ALJ found that Plaintiff has the residual capacity to perform light work, except that she was limited to no more than frequent climbing of stairs or ramps, or balancing, stooping, kneeling, or crouching and not more than occasional climbing of ladders, ropes, or scaffolds or bilateral overhead reaching.  (AR 20.)  Additionally, the ALJ found that Plaintiff should work with not more than occasional exposure to concentrated levels of pulmonary irritants such as fumes and dust, and not more than frequent ordinary gross handling or fine-fingering tasks bilaterally.  (AR 20.)

2. <u>Opinion Evidence</u>

The ALJ gave good reliance to the assessments of the state agency physicians which were well explained and were supported by direct citations to the overall medical evidence as a whole. (AR 20.)

On September 1, 2016, Dr. Fast completed a residual functional capacity assessment for Plaintiff.  (AR 78-80, 91-93.)  He opined that Plaintiff was able to lift and carry 20 pounds occasionally and 10 pounds frequently; could stand and/or walk 6 hours in 8 hour workday; sit more than 6 hours in an 8 hour workday; and had unlimited push and pull.  (AR 78-79.)  Plaintiff could frequently climb ramps and stairs, balance, stoop, kneel, crouch; and occasionally climb ladders, ramps, scaffolds, and crawl.  (AR 79.)  She was limited to occasional overhead reaching bilateral; and should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation. (AR 79-80.)

Dr. Linder completed a review on reconsideration on January 3, 2017.  (AR 106-108, 119-121.)  He adopted the prior residual functional capacity assessment in large part, but also found that Plaintiff was limited to frequent fine/gross manipulation.  (AR 107.)  Dr. Linder considered that Plaintiff had an MRI showing multilevel cervical stenosis and cord compression and had undergone cervical decompression surgery because of cord stenosis and her subjective

1   symptoms in May 2016 to protect her from reinjury and potential quadriplegia.  (AR 108.)

2          To the extent that Plaintiff argues that the agency physicians opinions cannot be

3   considered substantial evidence to support the ALJ's opinion because they did not review the

4   later evidence in the record, the Ninth Circuit has repeated held that the fact that time elapsed

5   since the agency physician opinion was issued and subsequent evidence has been introduced into

6   the record does not preclude an ALJ from relying on the opinions of State agency medical

7   consultants.  Owen v. Saul, 808 F. App'x 421, 423 (9th Cir. 2020) (unpublished)[4] (there is

8   always some time lapse between a consultant's report and the ALJ hearing and decision, and the

9   Social Security regulations impose no limit on such a gap in time ");  Jennings v. Saul, 804

10  F.App'x 458, 462 (9th Cir. 2020) (unpublished) ("there is always some time lapse between a

11  consultant's report and the ALJ hearing and decision, and the Social Security regulations impose

12  no limit on such a gap in time.  At the time they issued their opinions, the non-examining experts

13  had considered all the evidence before them, satisfying the requirements set forth in 20 C.F.R. §

14  404.1527 (c)(3).");  Garner v. Saul, 805 F.App'x 455, 458 (9th Cir. 2020) (unpublished) (same).

15  The Social Security regulations impose no limit on how much time may pass between a report

16  and the ALJ's decision in reliance on it.").  "[A] substantial delay would undoubtedly be

17  significant if, in the interim, the ALJ received additional medical evidence that in her opinion

18  may change the expert's finding."  Garner, 805 F.App'x at 458.

19         Plaintiff argues that the agency physicians did not consider the February 22, 2017 MRI of

20  the cervical spine documenting post-surgical changes, but the ALJ considered the MRI and

21  found that it showed less neural-foraminal narrowing than before surgery and no findings of

22  stenosis or myelopathy.  (AR 19, 922-924.)  Further, the ALJ considered that an MRI on

23  September 8, 2018 showed no compression of the spinal cord.  (AR 22, 983-984.)

24         Plaintiff argues that ALJ did not consider the May 9, 2017 and July 12, 2018 skin biopsy

25  for epidermal nerve fiber density which was found to be compatible with moderate to severe

26  length dependent small fiber neuropathy.

27

28  _____
    [4] Citation to these unpublished Ninth Circuit opinions is appropriate pursuant to Ninth Circuit Rule 36-3(b).

On May 9, 2017 a skin biopsy report was issued with findings compatible with moderate to severe length dependent small fiber neuropathy.  (AR 780.)  On July 23, 2018, a skin biopsy report was issued with the findings compatible with moderate non-length small fiber neuropathy.  (AR 759.)   The recommendation notes that "[s]mall fiber neuropathy that are non-length dependent may be more commonly associated with abnormal glucose metabolism or autoimmune disorders."  (AR 759.)

Plaintiff argues that the ALJ did not consider this testing which indicates a form of neuropathy that would cause a burning sensation in her feet and would further limit her ability to stand and walk for long periods of time.  However, Plaintiff did not allege that she was unable to work due to neuropathy in her feet.  Plaintiff alleged that she was unable to work due to cervical myelopathy, scoliosis, asthma, congenital iodine deficiency, and Hashimoto thyroiditis.  (AR 236.)  She described her symptoms as numbness and tingling in her hands, arms, and legs.  (AR 246.)  At the hearing, Plaintiff testified that she was unable to work due to carpal tunnel and lower back pain and numbness that radiated from her back into her upper extremities and legs.  (See AR 43, 45, 50, 52-55.)

The Ninth Circuit has held that a claimant must raise issues at the administrative hearings to preserve them on appeal.  Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999), as amended (June 22, 1999) ("at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal").  Plaintiff did not raise neuropathies in her feet as a reason for her inability to work and cannot establish that the failure to consider the biopsy would result in prejudice because she did not preserve the issue for appeal.

The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the record."  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  Because the evidence that subsequently entered the record was consistent with the opinions of Dr. Fast and Dr. Linder, the ALJ properly relied on their opinions and substantial evidence supports the residual functional

capacity assessment.  Plaintiff argues that the opinions conflict with the findings and opinion of Dr. Rieckenberg.  However, the ALJ does not err in discrediting the physical therapist's opinion where it conflicts with that of "acceptable medical sources[.]"  Roberts, 734 F.App'x at 490; see also Huff v. Astrue, 275 F. App'x 713, 716 (9th Cir. 2008) ("The ALJ was entitled to give the physical therapist's opinion less weight, where the regulations did not specify how to weigh evidence from an 'acceptable medical source' against medical evidence from an 'other source' such as a physical therapist.").

**V.**

**CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ did not err in rejecting the opinion of Dr. Rieckenberg and finding Plaintiff's symptom testimony not credible, and the residual functional capacity is supported by substantial evidence in the record.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Mildred Propero Zialcita.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **January 7, 2021**

UNITED STATES MAGISTRATE JUDGE